IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | No. 3:19-cr-160-L (02) |
| | § | |
| BRANDON PARRISH, | § | |
| | § | |
| Defendant. | § | |

**SECOND AMENDED FINDINGS, CONCLUSIONS, AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Defendant Brandon Parrish is charged in a superseding indictment with Conspiracy to Interfere with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a); Interference with Commerce by Robbery, Aiding and Abetting, in violation of 18 U.S.C. §§ 1951(a) and 2; Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence, Aiding and Abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2; and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). *See* Dkt. No. 33.

After his arrest, the government moved to detain Parrish pretrial. *See* Dkt. No. 3 (3:19-mj-205-BK). At his initial appearance in March 2019, the Court appointed the Federal Public Defender for this district to represent Parrish. *See* Dkt. Nos. 4 & 6 (3:19-mj-205-BK). Parrish subsequently waived his right to a detention hearing without reservation. *See* Dkt. No. 12 (3:19-mj-205-BK). And the Court ordered that he be detained pending trial. *See* Dkt. No. 13 (3:19-mj-205-BK).

Parrish filed a *pro se* Emergency Motion for Reconsideration of Bail [Dkt. No. 86], citing the ongoing COVID-19 pandemic. The motion was before the undersigned

United States magistrate judge under a standing order of reference. The Court denied the *pro se* motion on April 10, 2020 because Parrish is represented by counsel and may not submit filings to the Court *pro se*. *See* Dkt. No. 90.

That same day, Parrish's counsel filed a Supplemental Emergency Motion to Revoke Detention Order, or in the Alternative, for Temporary Release under 18 U.S.C. § 3142(i). *See* Dkt. No. 91. This motion is also before the undersigned United States magistrate judge under a standing order of reference. *See* N.D. TEX. SPECIAL ORDER 3-251.

Parrish's motion (1) invokes 18 U.S.C. § 3145(b) and the Fifth, Sixth, and Eighth Amendments to the United States Constitution to ask for immediate release from custody and (2) alternatively seeks temporary release under 18 U.S.C. § 3142(i), which provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

The undersigned previously determined that a hearing is not necessary or appropriate here, and, because the motion seeks relief under 18 U.S.C. § 3145(b), the undersigned entered findings, conclusions, and recommendation to United States District Judge Sam A. Lindsay under 28 U.S.C. § 636(b)(1)(B). *See United States v. Cooper*, No. 3:16-cr-60-M, 2018 WL 1916983, at *17-*19 (N.D. Tex. Apr. 2, 2018); Dkt. No. 95.

## Background

Parrish's motion explains that,

- "[i]n light of the global pandemic declared by the World Health Organization (WHO) and according to guidance issued by the Centers for Disease Control and Prevention (CDC), the close contact and conditions at the Dallas County Jail where Mr. Parrish is detained create a heightened risk of a widespread outbreak and a serious and potentially deadly health risk to Mr. Parrish";

- "[a]s detailed by Mr. Parrish in his *Pro Se* Emergency Motion for Reconsideration of Bond, although Mr. Parrish is not representing at this point that he suffers from any sort of health issue that would make him more susceptible to suffer complications that could be deadly if he were to contract coronavirus, nevertheless COVID-19 coronavirus, which is a dangerous illness, is spreading rapidly through the United States, through Texas, and is present at the Dallas County Jail"; and

- "due to the fact that the Federal Public Defender has prohibited assistant defenders including Mr. Parrish's counsel from visiting the Dallas County Jail at this time because of the COVID-19 coronavirus outbreak, Mr. Parrish requests that his order of detention be revoked, or at the very least, that he be released temporarily under § 3142(i) until this pandemic has ended."

Dkt. No. 91 at 1-2 (footnotes omitted). According to Parrish, when he "originally waived his detention hearing and was ordered held without bond, circumstances were different," and "[t]his Court must now consider a very different reality from the one

that existed when he was ordered held under 18 U.S.C. § 3142(b)." *Id.* at 2.

After the undersigned entered an amended recommendation to deny Parrish's motion, Parrish's counsel filed a response to the Amended Findings, Conclusions, and Recommendation of the United States Magistrate Judge, explaining that

> Pages 9 and 10 of the Proposed Findings detail the information that Parrish's Counsel had available at the time of the filing of the Supplemental Emergency Motion. Additionally, on Pages 10 and 11 of the Court's proposed Findings, the Magistrate Court concludes that Parrish has not put forward specific facts that would show that Parrish is entitled to the relief he is seeking. In response to this, Mr. Parrish, through his girlfriend, Constance Hardy, provided the following information on April 16, 2020, via email:

> Brandon has in fact been exposed to Covid-19. Brandon was housed with 64 other inmates. He states that inmates recently placed in custody are being placed in general population with inmates that have been housed for a while. Brandon's recent contact was the results of a new inmate being housed with him. He states that upon being placed in custody the new inmate made mentions of not feeling well and did not receive medical attention until he became very ill four days after being placed in custody. The inmate was then tested for Covid-19. Upon waiting for that inmates results Brandon states he and others spoke with Les Amarillas, a lab tech for Parkland Hospital on April 16th . Amarillas advised that because of the way inmates are being housed and due to the living conditions of the jail if one person tests positive for Covid-19 and others did not eventually everyone would have positive test results. 6 inmates received positive test results 3 whose name and bookin information I will include at the closing of this email. Brandon states the positive test results were received at 10am on April 18, but he was not moved to another location until 5pm that same day, moved by Officers Cain, Garcia, and Gibson.

> Brandon states he did not receive a face mask until it was proven that he had been exposed to Covid-19. Brandon has also informed that the ability to wash his hands when he wants or as often as he wants is not there due to there being no hand soap available at times. Brandon states there is a hassle when requesting soap from officers and he did not receive toiletries until April 20th. It was also mentioned that Brandon has not received correspondence material since early March. While in quarantine there are currently 5 inmates being housed together with no ability

to remain 6 feet away from each other.

Brandon has asthma and is currently taking Albuterol to treat his condition. If the recent exposure does not cause for more medical attention Brandon would be placed back in general population. While in quarantine Brandon is able to communicate with me from time to time, but there are times when phones are cut off. He has asked me to see if you have contact information other than the office phone number that you would like to share so that he could possibly reach out to you in a conference call. In the event that Brandon is released he would be released to my home. I reside in Dallas County in Oates Apartments in Mesquite. My household includes our daughter whom is 5 and myself. I work full time from home, and due to the recent closing of schools our daughter is home all day as well.

....

For the reasons stated in the Supplemental Emergency Motion and the supplemental information provided above, Mr. Parrish believes he has demonstrated that new facts exist that would allow for his detention hearing to be re-opened. Mr. Parrish respectfully asks that the detention hearing be re-opened, and that the Magistrate set this motion for a hearing, and that after presentation of evidence and argument, that the Magistrate release Mr. Parrish and place him under pretrial supervision with strict conditions of release.

Dkt. No. 98 at 1-3 (footnote omitted). The government requested and received permission to file a sealed response but has not filed a response by the deadline that Judge Lindsay set. *See* Dkt. No. 99; Dkt. No. 100.

Judge Lindsay entered an order providing that, "[c]onsidering the 'new information' provided by Defendant's counsel, the court also recommits this action to the Magistrate Judge for further consideration to determine whether the 'new information' is sufficient to reopen the detention hearing or warrants temporary release. Given the nature of Defendant's request, the court requests that the Magistrate Judge enter a recommendation expeditiously after the parties have made their respective filings." Dkt. No. 100 at 2.

The undersigned now enters these amended findings, conclusion, and

recommendation to address those recommitted matters.

## Legal Standards and Analysis

"The provisions of 18 U.S.C. §§ 3142 and 3144 govern pretrial release." FED. R. CRIM. P. 46(a).

Parrish was eligible for pretrial detention under 18 U.S.C. § 3142(f)(1) at his initial appearance because he was charged by a complaint with a felony offense involving the possession or use of a firearm. *See* 18 U.S.C. § 3142(e)(3)(E). Under the Bail Reform Act, "[i]f, after a hearing pursuant to the provisions of [18 U.S.C. § 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). And, as Parrish acknowledges, the government, in moving for detention, "also invok[ed] the presumption of detention on the basis that there was probable cause to believe he had committed a drug/firearm offense with a 10+ year statutory penalty." Dkt. No. 91 at 11; *see also* Dkt. No. 3 at 2 (3:19-mj-205-BK).

Parrish knowingly and voluntarily waived a preliminary hearing and a detention hearing without reservation, after consultation with the Assistant Federal Public Defender representing him at the time, *see* Dkt. Nos. 11 & 12 (3:19-mj-205-BK), and was ordered detained pending trial under 18 U.S.C. § 3142(f), *see* Dkt. No. 13 (3:19-mj-205-BK).

The Court may reopen a detention hearing, "before or after a determination by

the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

And, "[i]f a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b).

The Court also "may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i); *see also United States v. Parker*, 848 F.2d 61, 63 (5th Cir. 1988) (explaining that "a judicial officer may subsequently order the temporary release of the detainee to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense.'" (quoting 18 U.S.C. § 3142(i))).

The undersigned will address each basis that Parrish raises in turn.

I.     18 U.S.C. § 3145(b)

Parrish waived a detention hearing and was ordered detained under 18 U.S.C. § 3142(f) on March 6, 2019. *See* Dkt. Nos. 11, 12, & 13 (3:19-mj-205-BK).

As a judge in this district recently explained, under Section 3145(b),

> "[w]hen the district court acts on a motion to revoke or amend a
> magistrate's pretrial detention order, the district court acts *de novo* and
> must make an independent determination of the proper pretrial
> detention or conditions for release." *United States v. Rueben*, 974 F.2d
> 580, 585-86 (5th Cir. 1992) (citing *United States v. Fortna*, 769 F.2d 243,
> 249 (5th Cir. 1985)). However, a defendant must seek review of a
> magistrate judge's detention order within fourteen days as prescribed
> by Fed. R. Crim. P. 59(a), or the "right to review is waived, and review
> by the district court following such a waiver is discretionary and not a
> matter of right." *United States v. Watts*, Crim. No. 3:09-CR-249-D (09),
> 2010 WL 11452009, at *1 (N.D. Tex. June 25, 2010) (citation omitted).

*United States v. Green*, No. 3:18-cr-356-S, 2019 WL 6529446, at *2 (N.D. Tex. Dec. 4,

2019); *accord United States v. Cooper*, No. 3:16-cr-60-M, 2018 WL 1916983, at *2

(N.D. Tex. Apr. 2, 2018) (applying same standards).

Parrish waited over a year to file this motion, and the grounds that he raises

can be properly analyzed under 18 U.S.C. §§ 3142(f) and 3142(i). The Court should

determine that Parrish's motion is untimely under Section 3145(b) and decline to

exercise its discretion to review the detention order under that provision.

II    18 U.S.C. § 3145(f)

18 U.S.C. § 3142(f)(2)

> provides that a detention "hearing may be reopened, before or after a
> determination by the judicial officer, at any time before trial if the
> judicial officer finds that information exists that was not known to the
> movant at the time of the hearing and that has a material bearing on
> the issue whether there are conditions of release that will reasonably
> assure the appearance of such person as required and the safety of any
> other person and the community."
>
> Under Section 3142(f)(2), the United States Court of Appeals for
> the Fifth Circuit has "interpreted th[e] standard as asking whether any
> 'new' information was presented." *United States v. Stanford*, 367 F.
> App'x 507, 510 (5th Cir. 2010) (citing *United States v. Hare*, 873 F.2d
> 796, 799 (5th Cir. 1989); *United States v. Stanford*, 341 F. App'x 979,
> 984 (5th Cir. 2009) ("It cannot therefore be said that [the witnesses']

testimony was newly discovered or previously unavailable.")).

The Court may reject a motion to reopen because the evidence to be presented is not new or because it would not be material. *See Hare*, 873 F.2d at 799 ("Hare seeks a second hearing on various statutory grounds. First, he seeks to have his sister, mother, and a friend testify that he appeared whenever required to do so during prior prosecutions. He would also offer evidence of his exemplary conduct as an electrician while detained and of the fact that his pretrial incarceration will last considerably longer than usual. Under the Bail Reform Act a hearing may be reopened at any time before trial 'if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue [of risk of flight or dangerousness].' We agree with the district court that the testimony of Hare's family and friends is not new evidence. Nor can the length of his current or potential future detention be considered under this section since it is not material to the issue of risk of flight or dangerousness. Given Hare's past record of narcotics convictions and the seriousness of the present charges, the district court did not abuse its discretion in finding that Hare's work as an electrician and selection as a trustee while in detention is not sufficiently material to the issue of dangerousness to justify a second hearing." (footnote omitted)); *accord Stanford*, 367 F. App'x at 510-11.

*Cooper*, 2018 WL 1916983, at *15 (citation modified), *rec. accepted*, 2018 WL 1912708 (N.D. Tex. Apr. 23, 2018); *see also United States v. Martin*, No. 13-00466 JSW (KAW), 2015 WL 1738362, at *2 (N.D. Cal. Apr. 13, 2015) ("[T]he purpose of the statute ... is to allow parties to present unknown information that increases the chances the defendant appears for their criminal hearing, or decrease the danger the defendant poses to an individual or the community as a whole.").

Parrish's original motion does not specify what new evidence – what new information that exists now and was not known to him when he waived a detention hearing – supports reopening the issue of detention other than circumstances presented by or associated with the COVID-19 pandemic. *See* Dkt. No. 91. He generally explains that, "[t]o the extent that there is any concern regarding danger

or flight risk, Mr. Parrish could be placed on strict conditions of supervision such as home detention with electronic monitoring," *id.* at 2 n.3. And he "asks the Court to reconsider detention and allow him to present evidence that would show that he can overcome this presumption and that he is neither a flight risk nor a danger to the community, and that given the circumstances, he should be released." *Id.* at 11-12.

But these general assertions fail to show that any new information, if it exists, "increases the chances the defendant appears for their criminal hearing, or decrease the danger the defendant poses to an individual or the community as a whole." *Martin*, 2015 WL 1738362, at *2. A defendant seeking to reopen under Section 3142(f) must specify what new, material evidence justifies reopening a hearing in the first instance.

Otherwise, Parrish's original motion recounts information regarding the COVID-19 virus and resulting pandemic, *see* Dkt. No. 91 at 2-5, and more specifically explains that,

- "according to Dallas County's public-health director, 29 inmates and two detention officers have tested positive for coronavirus at the Dallas County Jail";

- "[w]hile the Dallas County Jail initially represented that it had quarantined four inmates that had tested positive for COVID-19 coronavirus, the number of inmates at Dallas County who have tested positive for the virus has continued to increase and will likely continue to do so";

- "[a]s additional people are arrested, who have been out in the community as

the coronavirus spreads, if they are not symptomatic, they will be brought into the jail and held with the existing population, potentially bringing COVID-19 into this population held in large numbers, close quarters, and low sanitary conditions";

· "[t]he circumstances that existed when Mr. Parrish was ordered detained have now changed" because "[t]here is a pandemic that poses a direct risk to Mr. Parrish that is far greater if he continues to be detained during this unprecedented public health crisis"; and,

· "[i]f Mr. Parrish contracts COVID-19 while detained, it will pose a dangerous risk to other members of our community as very limited resources – ventilator, hospital bed, personal protective equipment ('PPE') – will have to be allocated to Mr. Parrish's care in an already burdened medical system."

*Id.* at 3, 5, 6.

To the extent that Parrish argues that his release is necessary to protect the safety or good of the community, that is unpersuasive in the context of Section 3142 because the "assertion that there is a public good in the release of as many prisoners as possible to avoid spread of the pandemic, as [Parrish essentially] argues ..., would be an argument for releasing all detainees." *United States v. Munguia*, No. 3:19-cr-191-B (03), 2020 WL 1471741, at *4 (N.D. Tex. Mar. 26, 2020) (internal quotation marks and citation omitted). "[A]nd, as other courts have also concluded, the court cannot not release every detainee who may be at risk of contracting COVID-19, as it would then be required to release *all* detainees." *United States v. Kerr*, No. 3:19-cr-

- 11 -

296-L, 2020 WL 1529180, at *3 (N.D. Tex. Mar. 31, 2020) (citation omitted).

And, regarding the conditions in the facility in which Parrish is detained, as another judge in this district recently explained in this context,

> COVID-19, as coronavirus disease 2019 is known, is an infectious disease caused by a new virus, which causes respiratory illness and has resulted in thousands of deaths around the world, with more than 8,900 in the United States alone. According to the Center for Disease Control (CDC), persons with underlying medical conditions such as diabetes and obesity are at a higher risk of developing serious COVID-19 illness. The CDC has acknowledged the particular challenges faced by correctional and detention facilities in controlling the transmission of COVID-19 and has provided some guidance, as several courts have recognized.

*United States v. Morris*, No. 3:19-cr-573-B, 2020 WL 1694301, at *4 (N.D. Tex. Apr. 6, 2020) (citations omitted). And Parrish's health and the public health emergency caused by COVID-19 are extremely important considerations, and the Court does not take them lightly.

Parrish's counsel also represented that "the Court should be aware that Mr. Parrish is African American and there have been reports that 'novel coronavirus is infecting and killing black Americans at a disproportionately high rate;' for example, in Louisiana, where African Americans represent 32% of the population, 70 % of the deaths in Louisiana that were caused be coronavirus were African Americans." Dkt. No. 91 at 9. But that, again, is too generalized to stand as new, material evidence that would support Parrish's release.

But in response to the original amended findings, Parrish's counsel, through Parrish's girlfriend's email, provided additional information that Judge Lindsay summarized as follows:

According to the information provided by Defendant's girlfriend,

> Defendant has been in contact with someone who tested positive for COVID-19. The girlfriend further noted that he was not provided a mask until it was proved that he was exposed to COVID-19 and that he is not able to wash his hands when he wants because sometimes there is no hand soap available. She also noted that Defendant has asthma and takes Albuterol for his condition. Defendant's counsel acknowledged that due to her inability to visit the jails, she has not confirmed this information with Defendant; however, she has provided his girlfriend with contact information for him to reach her. Nonetheless, Defendant's counsel contends that this new information is sufficient to re-open his detention hearing and requests that the court grant this request.

Dkt. No. 100 at 1-2.

But, as the government has pointed out, in what are now three filings, Parrish "all but completely ignores the factors that this Court must consider in determining whether a defendant should be detained pending trial." Dkt. No. 94 at 7. Parrish has yet to offer any information that would address or "ha[ve] a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). The conditions at Dallas County Jail and any possible exposure that Parrish may have had to COVID-19 do not, alone, amount to information that would be relevant to, or enable Parrish to show he can overcome, the rebuttable presumption and show that he is neither a flight risk nor a danger to the community and can be released pending trial on a combination of conditions that would reasonably assure the appearance of the person as required and the safety of any other person and the community.

The Court should deny Parrish's request as construed as a 18 U.S.C. § 3142(f)(2) motion to reopen his detention hearing.

III.    Eighth and Fifth Amendments

Another judge in this district recently and thoroughly analyzed the standards governing a motion seeking release under the Eighth and Fifth Amendments based on the COVID-19 pandemic, explaining that

> [t]he Eighth Amendment of the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. "The protections of the Eighth Amendment ... are limited in scope to convicted prisoners and do not apply to pretrial detainees" such as Defendant, however. *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). A federal pretrial detainee's constitutional rights related to conditions of confinement instead flow from the Due Process Clause of the Fifth Amendment. It provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law...." U.S. CONST. amend. V.
>
> "[P]retrial detention under the Bail Reform Act does not on its face violate the due-process clause of the Fifth Amendment." *United States v. Hare*, 873 F.2d 796, 800 (5th Cir. 1989), citing *United States v. Salerno*, 481 U.S. 739, 742 (1987). "The Due Process Clause of the Fifth Amendment prohibits holding pretrial detainees under conditions that amount to punishment." *United States v. Arce*, 30 F.3d 1494, 1994 WL 399506, at *7 (5th Cir. 1994), citing *Bell*, 520 U.S. at 535. Pretrial detention in order to secure a defendant's appearance or protect the public is not punitive. *See Salerno*, 481 U.S. at 748. "Because pretrial detention under the Act is regulatory, not penal, it does not constitute 'impermissible punishment before trial' that would violate due process." *Hare*, 873 F.2d at 800, quoting *Salerno*, 481 U.S. at 742; *see also United States v. Stanford*, 394 F. App'x 72, 2010 WL 3448524, at *1 (5th Cir. 2010) (the due process clause "'forbids pretrial detention that is punitive, rather than regulatory, in nature'") (citing *Salerno*, 481 U.S. at 747-48)). As long as it is reasonably related to a legitimate governmental objective, pretrial detention without more does not amount to punishment; detention that is not reasonably related to a legitimate goal, or is arbitrary or purposeless, may constitute constitutionally prohibited punishment, however. *See Bell*, 520 U.S. at 539.
>
> No court within the Fifth Circuit appears to have considered whether continued pretrial detention in light of the COVID-19 pandemic violates the Due Process Clause of the Fifth Amendment. Due Process challenges appear to have been uniformly rejected elsewhere, however. [citing cases]

Here, Defendant generally asserts Lew Sterrett is "understaffed

- 14 -

and underequipped to treat the spread of COVID-19," and that his continued detention there violates his right to due process. (*See* doc. 22 at 3.) He does not allege that he is being detained in the same part of the facility where anyone who is symptomatic or has been diagnosed with COVID-19 is being detained, that he has been exposed to anyone who is symptomatic or has been diagnosed with COVID-19,or even that he has any underlying condition that makes him more susceptible to severe illness from it. *See United States v. Wright*, No. 3:18-cr-635-N, 2020 WL 1694298, at \*6 (N.D. Tex. Apr. 7, 2020), citing *United States v. Morris*, No. 3:19-CR-573-B, 2020 WL 1694301, at \* (N.D. Tex. Apr. 6, 2020) (citations omitted). Nor has he alleged that Lew Sterrett is not taking reasonable measures to prevent the spread of COVID-19 or to protect him from it.

In *Wright*, the court rejected a similar argument for release based in part on allegations that Lew Sterrett was unequipped to prevent transmission of COVID-19 and treat infected detainees, and that the defendant's ongoing detention there posed an imminent threat to his life because he had an underlying medical condition. 2020 WL 1694298, at \*6. It noted that "'[a]s for local pretrial detention facilities the Marshals Service contracts with, each has their own internal procedures as to how they are dealing with the COVID-19 virus and are following CDC guidelines to the best of their ability. Each facility has updated their intake procedures, which includes screening each new inmate for the COVID-19 symptoms, and will deny entry into their facility if an inmate demonstrates any symptoms.'" *Id.* at 6; *see also Morris*, 2020 WL 1694301, at \*5 ("The United States Marshal's Office for the Northern District of Texas has confirmed that all of the facilities in which it houses federal detainees are implementing practices to protect detainees in accordance with CDC guidelines.").

*United States v. Preston*, No. 3:19-cr-651-K, 2020 WL 1819889, at \*3-\*4 (N.D. Tex. Apr. 11, 2020) (citations omitted).

Parrish similarly has not offered evidence or facts that support a finding that his continued pretrial detention in the Dallas County Jail is not reasonably related to a legitimate governmental objective or – if the standards that he cites even apply in this context, *see* Dkt. No. 91 at 9-10 – poses a substantial risk of serious harm with the detaining official's state of mind reflecting deliberate indifference to inmate

health or safety.

The Court should deny Parrish's motion under the Fifth and Eighth Amendments.

IV.    Sixth Amendment

Parrish's counsel also asserts that his immediate "release is appropriate in protection of Mr. Parrish's Sixth Amendment right to counsel," where

· "Mr. Parrish is currently incarcerated and the COVID-19 pandemic has made it nearly impossible for undersigned counsel to meet or confer with him";

· "[d]ue to the COVID-19 pandemic and the threat to public health, the Dallas County Jail has restricted visits to inmates";

· "the Federal Public Defender is not permitting assistant federal public defenders to visit clients at the Dallas County Jail in person for legal visits";

· "the telephone system used by the Dallas County Jail is a private system that requires parties to pay in advance and sign up for a contract," and, "[w]hile the Office of the Federal Public Defender has explored obtaining this sort of contract for its office, the paid system is such that it is impossible for the office to set up a single account that could be utilized by the office"; and

· "[o]n April 10, 2020, the District Court entered a Protective Order, which limits Counsel's ability to send discovery via mail over to Mr. Parrish," and "the discovery in this case is voluminous, which in turn caused counsel to seek a continuance in the case on April 3, 2020."

Dkt. No. 91 at 10.

Parrish's counsel acknowledges that "the case is now set for trial on November 3, 2020" and asserts that "[t]he only way to review and discuss discovery subject to a protective order provided in this case under the current circumstances would be for counsel to write Mr. Parrish, and counsel would be very hesitant to put specifics regarding the discovery in writing for fear of violating the protective order." *Id.* Parrish's counsel therefore contends that "[t]he COVID-19 pandemic has created changed circumstances in our criminal justice system that warrants a reconsideration of Mr. Parrish's detention, and the facts support his request to be released on bond." *Id.*

As another judge explained when faced with a similar argument in this context, "access to counsel is not a factor to be considered under 18 U.S.C. § 3142(g)," and "even assuming that the restrictions on contact and communications with counsel identified by the defendant constitute an infringement of his Sixth Amendment rights, he has not cited any authority that his release is an appropriate remedy." *United States v. Robinson*, No. 20-cr-00008-GLR-1, 2020 WL 1820089, at *6 (D. Md. Apr. 11, 2020).

Neither has Parrish, and the Court should deny his motion on these grounds.

V.     18 U.S.C. § 3142(i)

But, as noted above, 18 U.S.C. § 3142(i) does "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. §

3142(i). Under Section 3142(i), courts have held that a defendant "bear[s] the burden to show that his release is 'necessary for preparation of the person's defense'" or for another compelling reason. *United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013).

In the context of arguments for release based on the COVID-19 pandemic as "another compelling reason," another court has explained that

> [t]here is limited authority as to when temporary release is justified under § 3142(i) based on "another compelling reason," although a defendant's medical condition may present that compelling reason in a particular case. *See United States v. Rebollo-Andino*, 312 Fed. App'x 346, 348 (1st Cir. 2009) (noting the defendant could seek temporary release under § 3142(i) for medical reasons. Courts have typically granted relief under § 3142(i) only "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020). ....
>
> A defendant's concerns that he or she would face heightened COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis, which focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community. The risk of harm to the defendant does not usually bear on this analysis. Rather, whether a defendant's particular circumstances warrant release in light of the COVID-19 pandemic ought to more properly considered on a case-by-case basis under the "another compelling reason" prong of § 3142(i), as the district court did in *Hamilton*, 2020 WL 1323036, at *2.

*United States v. Clark*, Case No. 19-40068-01-HLT, 2020 WL 1446895, at *2-*3 (D. Kan. Mar. 25, 2020). That court noted that the considerations for determining whether detention or release is appropriate under Section 3142 "should be taken into consideration in determining whether a defendant has presented such compelling reasons for temporary release that they effectively override or at least sufficiently counterbalance the findings that originally justified the pretrial detention order." *Id*.

at *3.

As noted above, the restrictions to which Parrish points as infringing or threatening his Sixth Amendment right to counsel are temporary, and his trial has been continued to November 2020. Under all the circumstances, Parrish has not met his burden to show that his release at this time – to any as-yet-unidentified "appropriate person" under Section 3142(i) – is necessary for preparing his defense despite the restrictions imposed at the Dallas County jail and – as Parrish's counsel acknowledges – by the Federal Public Defender.

And the Court should deny Parrish's alternative Section 3142(i) request pointing to risks posed by the COVID-19 pandemic as a "compelling reason" for his temporary release for the same reasons explained above: The conditions at Dallas County Jail and any possible exposure that Parrish may have had to COVID-19 does not, alone, amount to information that would be relevant to, or enable Parrish to show he can overcome, the rebuttable presumption and show that he is neither a flight risk nor a danger to the community and can be released pending trial on a combination of conditions that would reasonably assure the appearance of the person as required and the safety of any other person and the community. Parrish offers no factual basis to believe that his release would be appropriate under 18 U.S.C. § 3142(c) and (e), after considering the 18 U.S.C. § 3142(g) factors, and, under those circumstances, his concerns regarding COVID-19 at his detention facility and his possible exposure alone do not justify temporary release to an "appropriate person" under 18 U.S.C. § 3142(i). *Cf. Kerr*, 2020 WL 1529180, at *3 ("Even had he made such assertion, the

court is not convinced that it would be sufficient, without more, to meet his burden under Section 3145(c).").

The Court should determine that Parrish has failed to meet his burden under 18 U.S.C. § 3142(i) to show that his temporary release from detention is necessary at this time for preparation of his defense or for another compelling reason.

## Recommendation

For the reasons explained above, even after considering the information that Defendant's counsel provided in Response to Amended Findings, Conclusions, and Recommendation of the United States Magistrate Judge [Dkt. No. 98], the Court should deny Defendant Brandon Parrish's Supplemental Emergency Motion to Revoke Detention Order, or in the Alternative, for Temporary Release under 18 U.S.C. § 3142(i) [Dkt. No. 91].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fᴇᴅ. R. Cʀɪᴍ. P. 59(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 20, 2020

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE